IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ROBERT L. COLLINS BEY,

                                                                          OPINION and ORDER

               Plaintiff,

                                                                           08-cv-747-bbc

     v.

GERALD A. BERGE, RICHARD
SCHNEITER, PETER HUIBREGTSE,
GARY BOUGHTON and J. HUIBREGTSE,

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiff Robert Collins Bey is proceeding in forma pauperis on his claim that defendants Gerald A. Berge, Richard Schneiter, Peter Huibregtse, Gary Boughton and J. Huibregtse violated his First Amendment rights when they prohibited him from receiving mail and visits from Peggy Swan. The case is before the court on defendants' motion for summary judgment, dkt.# 29. I conclude that defendants' motion must be granted because plaintiff has failed to raise any genuine issues of material fact challenging defendants' entitlement to judgment as a matter of law on his First Amendment claim. Plaintiff's pending cross motion for summary judgment, dkt. #63, will be denied as moot.

      As an initial matter, plaintiff contends that he was denied a fair and adequate

1

opportunity for discovery. As I told plaintiff in the July 28, 2009 order denying his motion to compel discovery, he received the information he requested before he filed his brief in opposition to defendants' motion for summary judgment. Plaintiff has not identified any information he requested through discovery that he did not receive. Therefore, I find that plaintiff has failed to show that he did not have an adequate opportunity to conduct discovery.

From the facts proposed by the parties, I find that the following facts are material and undisputed.

## UNDISPUTED FACTS

Plaintiff Robert Collins Bey is an inmate confined at the Wisconsin Secure Program Facility, Boscobel, Wisconsin. Defendant Gerald A. Berge was the warden at the institution from September 27, 1998 to December 30, 2004. Defendant Richard Schneiter was the warden from March 6, 2005 to April 14, 2007. Defendant Peter Huibregtse is the current warden. Before becoming warden, Huibregtse was the security director and deputy warden at the institution. Defendant Gary Boughton was the security director from October 29, 2000 to September 16, 2007 and is now the deputy warden. Since July 2000, defendant Judith Huibregtse has been a correctional sergeant.

On February 7, 2002 defendant Boughton issued a memorandum to all inmates

2

concerning photographs:

> Effective February 10th, you will not be able to send other inmates any personal pictures as this is considered your personal property. Pictures, including those purchased from Surrogate Sisters or any like company, will have your inmate number stamped or labeled on the back. Any attempts to transfer these pictures or remove/alter your DOC number will result in a Conduct Report.

For security and administrative purposes, it is necessary that items like photographs bear the inmate's Department of Corrections number so that they may be quickly and accurately identified if lost or stolen. Inmates are not permitted to possess damaged or altered items because of the possibility that they would lead to false allegations against staff or other inmates concerning the cause of the damage.

Contraband is defined as property that is damaged or altered. Wis. Admin Code §DOC 303.10(1)(e). Inmates cannot possess contraband. Id. § DOC 303.47(2)(a). In addition, inmates are not permitted to transfer property to another inmate from one to another without authorization. Id. § DOC 303.40. The Department of Corrections Internal Management Procedures 1 addresses inmate property. It defines photographs as a type of inmate personal property and forbids possession of altered property by inmates.

On June 3, 2004, while working in the mailroom, defendant Judith Huibregtse seized mail sent by Peggy Swan to plaintiff. She advised plaintiff that the mail could not be delivered to him because it contained three photographs that had been altered. The inmate

3

number had been scratched off the back of the photographs. These photographs were not allowable property. Plaintiff advised Huibregtse to dispose of the mail in question by mailing it from the institution.

Defendant Berge was informed by staff that Peggy Swan had attempted to mail contraband into the institution. Berge sent Swan a letter dated June 10, 2004 suspending her mail and visiting privileges for one year. The letter states in pertinent part as follows:

> There appears to be an attempt by you to aid Inmate Collins and Bounds in the transferring of personal property. On June 3, 2004, the institution mailroom observed a letter addressed to Robert Collins and sent from you. In the letter were 3 photographs that were altered from their original state. It appears the inmate number had been scratched off. By scratching off one inmate's number and sending the photographs into another inmate, violates the policy that inmates cannot exchange photographs with each other. Per Administrative Code, the Security Director has the authority to suspend mail privileges if he or she believes that a member of the public has violated rules or Policies and Procedures.
>
> Additionally, per Administrative Code 309.08(4)(d), the Warden may remove a person's visitation privileges if there is reasonable grounds to believe the person poses a threat to the safety and security of the institution. As this is not the first occasion in which you have been involved in assisting inmates in violating Institution Policies and Procedures, I am suspending your mail and visiting privileges within the Department of Corrections for a period of 1-year. You may re-apply for re-instatement after the 1-year period at which the return of your privileges will be taken into consideration.

On two prior occasions Swan had been found to be involved in assisting inmates to

4

violate rules. In August 2002, defendant Boughton sent a letter to Swan suspending her visiting privileges because she had assisted inmate Conquest in circumventing policies and procedures by sending flowers to the residence of a person who works at the institution at his request. Department rules, § DOC 303.26(1) and (5), forbid inmates from from sending gifts to institution staff. In 2003, Boughton sent Swan a letter suspending her mail privileges with inmate Freeman for six months because she had attempted to aid him in establishing a business selling cards, in violation of § DOC 303.32.

On July 14, 2004, Boughton informed Swan by letter that the suspension of her mail privileges had been extended through July 10, 2005 because she had written an inmate after her privileges were suspended on June 10, 2004. Swan appealed the suspension of her visitation and mail privileges. In a letter written on July 4, 2004, she stated that she had picked up the photographs on a visit and had received a request to send them back to the same inmate. She stated that the numbers on the back were already marked off. She concluded the letter by saying that she saw nothing in the rules and procedures that deny inmates the right to exchange photographs.

In a July 15, 2004 letter denying her appeal, Berge stated that she had sent the pictures to plaintiff at the request of inmate Bounds and that this was an unauthorized transfer of property. He also referred her to Internal Management Procedures 1, which provided that photographs are personal property of inmates.

5

Plaintiff filed an offender complaint, WSPF 2004-20185 concerning the removal of Swan from his visitor list. The inmate complaint examiner recommended that defendant Huibregtse dismiss the complaint because Swan's mail and visiting privileges had been suspended. Because he believed the recommendation was reasonable, defendant Huibregtse dismissed plaintiff's complaint.

Defendant Huibregtse also reviewed plaintiff's complaints, WSPF 2005-23363 and WSPF 2005-23364, concerning the suspension of Swans's mail privileges with respect to plaintiff. The inmate complaint examiner had rejected the complaints as untimely. Huibregtse upheld the inmate complaint examiner's rejection.

During the period of the suspension of Swan's mail and visiting privileges, plaintiff could receive mail and visits from anyone else who was willing to abide by the institution's rules. There were several persons on plaintiff's approved visitor list. Also plaintiff could obtain photographs from his family, non-prisoner friends and commercial sources, provided they were not damaged or altered and complied with other Department of Corrections regulations concerning subject matter and format.

When defendant Schneiter became warden of the institution on March 6, 2005, Swan sent him a letter asking him to reconsider the suspension of her mail and visiting privileges. On April 8, 2005, Schneiter informed Swan that after reviewing all the information concerning her suspension, he concurred with the decisions of defendants Berge

6

and Boughton. He advised Swan that she might apply for re-instatement of her privileges after July 10, 2005. Sawn requested re-instatement of her mail and visiting privileges on July 10, 2005.

DISPUTED FACTS

The method by which Swan received the photographs she mailed to plaintiff in June 2004 is disputed. In his affidavit, plaintiff says that on February 11, 2004, officers found altered photographs without any inmate numbers on the back in his cell. Plt.'s Aff., dkt. #66, ¶3. He states that he had those photographs sent to Swan in February 2004, id., dkt. #66, exh. C, and that these were the photographs Swan mailed to him in July 2004. Although defendants state that exhibit C refers to plaintiff's return of photographs in July 2004, their statement cannot be correct because the exhibit is clearly dated February 2004. Swan muddies the waters by stating in a letter that she picked up the photographs on a visit and later received a request to send them back to the same inmate. Id., dkt. #66, exh. B. Defendants propose yet another way in which Swan might have received the photographs, asserting that Bounds sent them to Swan to send to plaintiff. Regardless of which version of Swan's receipt of the photographs is correct, this dispute of fact is not material because it does not matter how Swan received the photographs. The material and undisputed fact is that Swan sent plaintiff altered photographs, in violation of departmental regulations.

It is disputed whether Swan was trying to facilitate the exchange of photographs between inmates Bounds and Collins. Swan and plaintiff say that she was not. Defendant Berge says that she was. This issue of fact is not material.

Finally, although plaintiff attempts to dispute the fact that the photographs sent by Swan were altered, there is no evidence to support his conclusory statement. In fact, in his affidavit plaintiff states that the photographs he sent to Swan and that she mailed back to him were altered. Plt.'s Aff., dkt. #66, ¶¶3-4, exh. C. Nonetheless, he argues, defendants cannot prove that the photographs were damaged or altered because they did not issue a contraband tag or take a video of the photographs. Defendants agree that the photographs were not given a contraband tag, photographed or videotaped, but they explain that these things were not done because the photographs never made it into plaintiff's possession. The recording requirements apply only to contraband found during a cell search. Further, Swan admits that the photographs were altered. Id., dkt. #66, exh. B ("The numbers on the back [of the photographs] were already marked off."). Defendant J. Huibregtse confirmed that when he received the mail containing the photographs, the photographs were altered. J. Huibregtse Aff., dkt. #34, ¶9. Plaintiff has not submitted any evidence to put into dispute defendants' proposed fact that the photographs were altered.

8

OPINION

Under Fed. R. Civ. P. 56, summary judgment is appropriate "when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." Goldstein v. Fidelity & Guaranty Ins. Underwriters, Inc., 86 F.3d 749, 750 (7th Cir. 1996) (citing Fed. R. Civ. P. 56); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). When deciding a motion for summary judgment, the judge's function is not to weigh the evidence for herself and determine the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. "[I]t is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Id. at 248. All reasonable inferences from undisputed facts should be drawn in favor of the nonmoving party. Baron v. City of Highland Park, 195 F.3d 333, 338 (7th Cir. 1999).

In this case, plaintiff was prevented from corresponding and visiting with Peggy Swan when her mail and visiting privileges were suspended for one year. Prisoners have a protected First Amendment interest to communicate with those outside the prison. Thornburgh v. Abbott, 490 U.S. 401, 407 (1989); Rowe v. Shake, 196 F.3d 778, 782 (7th Cir. 1999). Prison restrictions on an inmate's communication with the outside world are valid only so long as they are reasonably related to a legitimate penological interest. Thornburgh, 490 U.S. at 408; Turner v. Safley, 482 U.S. 78, 89 (1987); Lindell v. Frank, 377 F.3d 655, 657 (7th Cir. 2004). In Turner, 482 U.S. at 89-91, the Supreme Court set

9

forth four factors to be used in evaluating whether this legitimate penological interests test is satisfied: (1) whether a valid, rational connection exists between the regulation and a legitimate governmental interest; (2) whether the prisoner has available alternative means of exercising the right in question; (3) whether accommodation of the asserted right will have negative effects on guards, inmates or prison resources; and (4) whether there are obvious, easy alternatives at a minimal cost.

Defendants contend that the first Turner factor is met because there is a valid rational connection between the suspension of Swan's mail and visiting privileges and the legitimate penological interests of rehabilitation and maintaining security. I agree. At the outset, I note that the Supreme Court has directed the courts that, "[b]ecause the realities of running a penal institution are complex and difficult, [ ] wide-ranging deference [is] to be accorded to the decisions of prison administrators." Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 126 (1977).

It is not disputed that Swan sent plaintiff altered photographs and had previously encouraged inmates to violate institution rules on at least two prior occasions. Plaintiff contends that Swan's mailing of the altered photographs did not constitute a rule violation because there was no written rule prohibiting the exchange of photographs until 2008. Wis. Admin. Code § DOC 309.30.01. However, DOC 309 IMP1, which was applicable at the time of the seizure of the photographs, defined photographs as a type of inmate personal

10

property and forbade inmate possession of altered property. Also, Wis. Admin. Code § DOC 303.10(1)(e) defines contraband as any altered personal property. The February 7, 2002 Memorandum issued by the institution stated specifically that inmates may not possess altered photographs and that inmates may not exchange photographs. By sending plaintiff altered photographs, Swan was sending him property that was contraband under applicable institutional rules. The fact that Swan sent contraband to plaintiff would have facilitated his violation of Wis. Admin. Code § DOC 303.47, which prohibits inmates from possessing contraband. Therefore, despite plaintiff's contention, Swan did violate an institutional rule.

Suspending Swan's mail and visiting privileges had a valid, rational connection to the legitimate interests of rehabilitation and maintaining security. Helping inmates to break prison rules will subject the inmates to disciplinary actions and sanctions for rule breaking. Sanctions could include substantial periods of segregated confinement, which would result in diminished access to rehabilitative programing. Thus, suspending mail and visitation privileges with a person who helps facilitate rule breaking helps inmates avoid discipline that would diminish their chances of rehabilitation.

Further, preventing persons outside the institution from facilitating inmates breaking of rules has a valid and rational connection to maintaining security. Security is diminished when those outside the institution help inmates to circumvent prison rules by creating disrespect for prison rules. Swan had encouraged and helped inmates to break prison rules

11

on two prior occasions. She sent plaintiff altered photographs that he was not allowed to possess. She also wrote an inmate after her mail privileges had been suspended. Swan's actions could reasonably have been seen as a threat to the security of the institution as well as impeding the rehabilitation of the inmates with whom she corresponded and visited.

Moreover, forbidding contraband, including altered photographs, in the institution has a valid and rational connection to the legitimate penological interest of maintaining security in the institution. When property is altered it is difficult to identify the property if it is lost or stolen. More important, damaged or altered property may lead to false accusations against staff or other inmates concerning the damage. Accordingly, a valid, rational connection exists between the relevant contraband regulations the institution's interest in rehabilitation and maintaining security.

Turning to the second <u>Turner</u> factor, there were alternatives available to plaintiff to maintain contact with the outside world. He was free to correspond with and visit with individuals who were willing to abide by the institution's rules. He had alternative sources for photographs. He could obtain photos from his family, non-prisoner friends and commercial sources provided only that the photographs complied with Department of Corrections regulations, that is, they were not damaged or altered.

I also conclude from the undisputed facts that a reasonable jury could not find in favor of plaintiff on the third and fourth <u>Turner</u> factors. Allowing Swan to communicate

12

with plaintiff and visit him could lead to further rule breaking and disrespect for prison rules by inmates. Because Swan had not been deterred from assisting inmates to violate rules by less serious sanctions in the past, a more severe restriction was necessary to prevent her from continuing to encourage and facilitate breaches of the institution's disciplinary rules. In other words, Swan's past behavior weighed against defendants' use of other, lesser sanctions. She had not stopped assisting inmates to break the rules after more narrowly tailored and shorter restrictions had been placed on her contact with inmates, which made the decision to suspend her visiting and mail privileges a reasonable option.

Although plaintiff did not engage in the behavior that resulted in the suspension of his contact with Swan, his First Amendment rights were not violated because the suspension of Swan's privileges was reasonably related to valid penological interests of inmate rehabilitation and institution security. Defendants are entitled to summary judgment on plaintiff's First Amendment claim.

Finally, I note that defendants discuss the question of interference with plaintiff's outgoing mail, but I denied plaintiff leave to proceed on that claim. Accordingly, I need not address the question.

ORDER

IT IS ORDERED that:

1. The motion for summary judgment, dkt. #29, filed by defendants Gerald A. Berge, Richard Schneiter, Peter Huibregtse, Gary Boughton and J. Huibregtse is GRANTED;

2. Plaintiff's motion for summary judgment, dkt. #63, is DENIED as moot;

3. The clerk of court is directed to enter judgment DISMISSING this case in favor of defendants.

Entered this 21st day of August, 2009.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

14